UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GENEX COOPERATIVE, INC.,

    Plaintiff,

    v.

JORGE T. CONTRERAS, et al.,

    Defendants.

NO.  2:13-cv-03008-SAB

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

    On December 12, 2012, Defendants Jorge T. Contreras, Daniel R. Senn, Erasmo J. Verduzco, and Robert H. VanderWeerd, inseminated cows at several dairy farms on behalf of their employer, Genex Cooperative, Inc. ("Genex"). The very next day, Defendants inseminated cows at the same dairy farms—but this time on behalf of CRV USA ("CRV"), a Genex rival. Jilted by its former employees and spurned by its customers, Genex filed suit in this Court to enforce non-competition agreements against three of the defendants, employee non-solicitation covenants against two of the defendants, and charged all defendants with tortious interference of contractual relations. Defendants counterclaimed alleging several violations of Washington State wage and hour laws. Presently, this Court addresses Plaintiff's Motion for Partial Summary Judgment, ECF Nos. 61, 108; Defendant Contreras' Motion for Partial Summary Judgment, ECF No. 62; Defendant Senn's Motion for Partial Summary Judgment, ECF No. 64; Defendant Verduzco's Motion for Summary Judgment, ECF No. 66; and

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** ~ 1

Defendant VanderWeerd's Motion for Summary Judgment. ECF No. 68. The case is before this Court on diversity jurisdiction grounds. 28 U.S.C. § 1332. The motions were heard without oral argument.

### *FACTS*

Dairy cows provide increased milk production for a period of time after giving birth or calving. Because of this increased production, farmers seek to maximize and control the number of gestating cows at any given time. A dairy cow is in heat or estrus for a short period of time—typically under a day— resulting in a narrow window of optimal time to impregnate the cow. Due to the limitations of bovine estrus, many farms implement an artificial insemination ("A.I.") program. Whether done in-house or through an A.I. provider, the A.I. program consists of daily monitoring of herds to determine which cows are in estrus, selecting strains of bull semen, providing "arm service" (physically inseminating the cow), and occasionally providing injections to prompt estrus. Nationwide, approximately thirty-five percent of dairy farms use an A.I. provider.

In the Sunnyside, Washington area, approximately eighty percent of dairy farms utilize A.I. providers, making it a "technician-dominant" area. Wisconsin-based Genex is among one of the six largest bovine A.I. providers in the country. Genex entered the Sunnyside market in the early 1990's and began using a team of Breeding Program Specialists ("BPSs") to service its accounts. The Sunnyside area was serviced by a team of BPSs that operated as a unit. Each month, the BPS team internally coordinated schedules to determine when a dairy appointment would require multiple BPSs and to coordinate relief work (when a team-member would service another BPS's accounts to provide the BPS with a day off).

A Genex BPS team is paid as a unit with each member receiving a percentage of the team's pool of commissionable dollars based on their contributions. The pool of commissionable dollars is made up of sales commissions and service commissions. Prior to 2011, the sales commission was

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 2

calculated by taking total sales income, subtracting the "base price" for the semen sold and multiplying by twenty-percent. The "base price" is monies Genex keeps from semen sales for its costs but do not necessarily correlate with actual costs. The sales commissionable dollars are added to service commissionable dollars, which, prior to 2011, were calculated at eighty-percent of service income. From the total commissionable dollars pool, expenses for total team mileage are deducted and the remainder is split among members of the team in relation to his number of cows serviced and sales earned. Lastly, each member is individually reimbursed his portion of mileage expenses that were previously deducted. In October 2011, Genex announced that it was altering the compensation system for BPSs. The commission from services dropped from eighty-percent of income to thirty-seven percent, and the commission from sales rose from twenty-percent to thirty-seven percent. The change in commission rates was allegedly to incentivize the BPSs to sell higher grade semen and to better align the interests of Genex and BPSs. After receiving negative feedback from the BPSs, Genex decided to transition the Sunnyside team's commission rates—beginning 2012 at forty-six percent, finishing the year at forty-four percent, and was set for forty-two percent for 2013. The compensation changes were made by Genex unilaterally.

Daniel Senn joined Genex's Sunnyside BPS team in 1999. Two years later, Robert VanderWeerd joined the team. Jorge Contreras was added to the Sunnyside team in 2006. Erasmo Verduzco had been a team-member from 2008 until February 2011, and rejoined the team in December 2011. As a condition of their employment with Genex, Senn, Contreras, and Verduzco each signed differing agreements containing non-competition covenants. Contreras and Verduzco also signed employee non-solicitation covenants. VanderWeerd reportedly refused to sign any restrictive covenants.

By late 2012, all four defendants were unhappy with Genex. Defendants allege their pay fluctuated, unexplained deductions were taken from their pay, they

did not have any, or enough, days off, and that they were dissatisfied with the new commission rates. According to the defendants, their work-load had increased in the fall of 2012 when two additional team members left Genex for other A.I. firms. Defendants report working seven-day weeks nearly every week and it upset the team that Genex did not promptly hire replacements for the departed team-members. Sometime in mid-to-late 2012, Senn and VanderWeerd met with representatives from CRV, another A.I. company. The CRV representatives were former members of Genex's management team and had previously worked with the defendants. By early December 2012, talks between VanderWeerd, Senn and CRV had advanced. Melissa Leatherman, a CRV employee and former account manager for Genex, and Senn began approaching current Genex customers about switching to CRV. Senn stated that Alan McNaughton, then a regional sales manager at Genex, was also present at some of these meetings.

In the days preceding December 12, 2012, Senn and VanderWeerd informed Contreras and Verduzco of the opportunity with CRV. The parties dispute whether CRV would have hired only part of the Genex Sunnyside BPS team, or if it required the full team. On December 12, Defendants met with CRV representatives, including Jim Bayne (another former Genex manager) and Leatherman, at a hotel in Sunnyside. Defendants agreed on employment terms with CRV, signed employment paperwork, and signed identical resignation letters that were submitted by mail to Genex. The next day, Defendants serviced the same farms they had previously been serving for Genex but with CRV semen. Nearly all of Genex's Sunnyside area customers switched to CRV with the defendants, none remained with Genex. Since December 2012, Genex has had no BPS and has only made nominal retail sales of bovine semen in the area.

//

//

//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 4

### MOTION STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex* 477 U.S. at 325.

In addition to showing that there are no questions of material fact, the moving party must show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

//
//
//
//
//
//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 5

*ANALYSIS*

**GENEX'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Genex moves for summary judgment on three issues: (1) the enforceability of the restrictive covenants, including the non-compete and employee non-solicitation obligations of Contreras, Senn, and Verduzco; (2) breach of the non-compete agreements by Contreras, Senn and Verduzco; and (3) dismissal of Defendants' affirmative defenses and counterclaims.

**1. Enforceability of Restrictive Covenants**

Genex moves for summary judgment declaring the defendants' restrictive covenants are enforceable. Employment restrictive covenants are valid only if they are reasonably necessary to protect an employer's business or goodwill. Restatement (Second) of Contracts § 188 (1981). The test to determine the validity of restrictive covenants in employment contracts is one of reasonableness, considering "(1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant." *Perry v. Moran*, 109 Wash.2d 691, 698 (1987) (quoting *Knight, Vale & Gregory v. McDaniel*, 37 Wash.App. 366, 369 (1984)) *modified on reconsideration*, 111 Wash.2d 885 (1989). Except as to disputed facts, the reasonableness of a restrictive covenant is a question of law. *Emerick v. Cardiac Study Center, Inc., P.S.*, 170 Wash.App. 248, 254 (2012) (citing *Alexander & Alexander, Inc. v. Wohlman*, 19 Wash.App. 670, 684 (1978). The burden is on the employer to demonstrate the reasonableness of a restrictive covenant. *Sheppard v. Blackstock Lumber Co., Inc.*, 85 Wash.2d 929, 933 (1975); *Techworks, LLC v. Willie*, 318 Wis.2d 488, 498 (Ct.App. 2009).

*//*

**a. Verduzco's Restrictive Covenants**

Verduzco's employment agreement with Genex explicitly provides that the agreement is governed by Wisconsin law. Genex, the drafter of the agreement, however, urges the application of Washington law. A district court must apply the choice-of-law rules of the state in which it sits when hearing a case based on diversity jurisdiction. *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Washington has adopted the Restatement (Second) Conflict of Laws §§ 187-88 (1971). In relevant part, the Restatement provides an explicit choice of law provision will govern unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . " *Id.* at § 187(2)(b).

Genex argues that Washington has a fundamental public policy contrary to Wisconsin law—namely, that Washington courts may reform unreasonable restrictive covenants whereas Wisconsin adopts an "all-or-nothing" rule. Genex, however, does not point to any statute or explicit policy statement that declares Washington has a fundamental policy necessitating the reformation of unreasonable covenants. Instead, Genex recites an explanation of the test Washington courts apply to determine the reasonability of restrictive covenants. *Wood v. May*, 73 Wash.2d 307, 310 (1968) (en banc). Washington courts have exercised their equitable powers to reform some otherwise unenforceable covenants but this is more akin to a "general rule of contract law" than to a fundamental public policy. *See* Restatement (Second) Conflict of Laws § 187, cmt. g. Genex's suggestion that fairness and efficiency dictate that Verduzco's agreements be governed by Washington law is uncompelling and affords no justification allowing it to ignore its own explicit choice of law provision. Because application of Wisconsin law would not be contrary to a fundamental policy of Washington, Wisconsin law applies to Verduzco's agreement.

Verduzco's agreement contains two separate restrictive covenants: a non-compete covenant, and an employee non-solicitation covenant. In relevant part the covenants state:

> 1.1 Employee . . . shall not, during the term of his/her employment . . . for a period of 18 months thereafter, directly or indirectly . . . (b) induce or attempt to induce any employee of the Company to terminate his/her employment relationship with the Company . . . or induce or attempt to induce any employee of the Company to breach any agreement with the Company . . .

> 3. <u>Restricted Competition</u> During the term of Employee's employment . . . and for 18 months following the date of termination . . . Employee will not attempt to divert any Company business by soliciting, contacting or communicating with "Employee Customers." This provision shall apply regardless of the reason for termination . . . "Employee Customer" shall mean any customer having had a "discussion" with Employee concerning the possibility of doing new or more business with the Company during the eighteen (18) months preceding Employee's termination of employment. "Discussion" shall refer to contact between Employee and a customer by either (a) direct contact with Employee in telephone conversations, in correspondence or e-mail correspondence, or face-to-face meetings.

Verduzco's non-compete covenant prohibits him from soliciting or contacting any dairy farm which he had sought either new or increased business from in the last eighteen months. These "employee customers" would include any farms which Verduzco may have sought business from but which refused to do business with Genex for any reason. Such a non-compete agreement is unenforceable under Wisconsin law. Prohibiting an employee from soliciting any customer the employee has tried but failed to do business with for the former-employer is a violation of Wis. Stat. § 103.465. *JT Packard & Assocs., Inc. v. Smith*, 429 F.Supp.2d 1052, 1056 (W.D.Wis. 2005). Therefore, Verduzco's non-competition covenant is unenforceable as a matter of law.

Verduzco's employee non-solicitation agreement prohibits him from "induc[ing] or attempt[ing] to induce any employee of the Company to terminate his/her employment relationship with the Company . . . or induc[ing] or attempt[ing] to induce any employee of the Company to breach any agreement

with the Company." Genex does not present any developed arguments as to the validity of the employee non-solicitation agreement under either Wisconsin or Washington law.

In *Heyde Cos., Inc., v. Dove Healthcare, LLC*, the Supreme Court of Wisconsin found a "no-hire" provision between two companies invalid under Wis. Stat. § 103.465 as a "harsh and oppressive" restriction on the rights of an employee. 258 Wis.2d 28, 41 (2002). That Court stated that "[a]n employer cannot indirectly [through no-hire agreements with other employers] restrict employees in a way that it cannot do directly under § 103.465." *Id*. Although one federal district court hearing a motion to dismiss did not recognize that *Heyde* applied to an employee's employee non-solicit clause, it is clear from its language that the Court presumed such a restriction was invalid. *Compare id.*, *with Share Corp. v. Momar Inc.*, 2011 WL 284273 *5 (E.D.Wis. 2011). Accordingly, Verduzco's employee non-solicitation clause is unenforceable as a matter of law.

As written, Verduzco's non-compete covenant and his employee non-solicit covenant are invalid under Wisconsin law. Because Wis. Stat. § 103.465 provides for an "all-or-nothing" reading of restrictive covenants, neither of Verduzco's restraints can be enforced in any manner.

**b. Senn's Restrictive Covenant**

Senn's Technician Agreement contains a choice of law provision selecting New York law as governing the agreement. The parties, however, agree there is no conflict between Washington and New York law and agree that Washington law applies to Senn's agreement.

Paragraph four of Senn's agreement states in relevant part:

> [T]hat, while he/she is so employed and for a period of 18 months after termination of his/her employment for any reason whatsoever, he/she will not, directly or indirectly, either as an employee of an organization, corporate or otherwise, or of any individual or as an independent contractor, divulge trade secrets, engage in either the artificial insemination of cattle or the sale of semen in the area in which he/she has been employed and rendered service.

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 9

Senn's agreement is not limited to customers he serviced with Genex but prohibits him from performing artificial insemination or the sale of semen in the "area in which [he] [w]as employed and rendered service." Both parties describe the area at issue as the Sunnyside area or region.

The burden is on Genex to establish the reasonableness of the covenants. *Sheppard*, 85 Wash.2d at 933. Genex cites just one Washington case in its effort to justify the geographical scope of Senn's non-compete clause. Genex offers *Alexander & Alexander v. Wohlman* as evidence of a Washington court upholding the "greater Seattle area" as a reasonable and enforceable geographical restriction. 19 Wash.App. 670. This, however, is a misreading of *Wohlman*. The restrictive covenants in *Wohlman* prohibited an insurance broker from engaging in that industry within 100 miles of the company office, and from soliciting or serving any of the company's former customers. 19 Wash.App. at 675. The appellate court found "the covenant was *unreasonable* in its geographic scope" and limited the application of the covenant only to the "solicitation and diversion" of any *former customer* in the Seattle area. *Id*. at 686-89 (emphases added). The court considered the hardship to the employee and refrained from prohibiting him from practicing his profession in the region and only limited the customers he could pursue.

Similarly, the Supreme Court of Washington has suggested covenants may need to be limited to soliciting or serving former clients. *See Wood*, 73 Wash.2d at 312; *Columbia Coll. of Music v. Tunberg*, 64 Wash. 19, 22 (1911). Indeed, Genex does not assert any additional protectable interests that are served by prohibiting Senn from inseminating cows in the Sunnyside area at farms that were not previously serviced by Genex. Accordingly, Senn's restrictive covenant is unreasonable because it goes beyond what is necessary for the protection of Genex's business or goodwill.

This Court has the equitable power to modify and narrow an unreasonable covenant in order to enforce its basic purpose. *Perry*, 109 Wash.2d at 703. The

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 10

specific facts and circumstances of the case dictate the reasonableness of any restrictions. *Wood*, 73 Wash.2d at 312. This Court declines to exercise its power to enforce any part of Senn's restrictive covenant because it would result in an injustice to Senn. *See id.* at 313 (describing the ability to enforce "if possible without injury to the public and without injustice to the parties.").

Reformation of this covenant is inappropriate because Genex has failed to meet its burden to show that the equities were in its favor. *See Sheppard*, 85 Wash.2d at 934 ("The party seeking to enforce a restraint . . . must prove the equities are in his or her favor."). As presented, it is impossible to ascertain the true essential purpose of the restrictive covenant. Genex drafted the agreement and had the opportunity to tailor the non-compete covenant to its specific needs. In its briefs, Genex asserts the purpose of the non-compete covenant was to retain its customers—a protectable interest under Washington law. Yet, of the four Sunnyside team-members, only one signed a non-compete clause limited to Genex customers. Verduzco's agreement applied to prospective customers, Senn's applied to all cows in the Sunnyside region, and VanderWeerd did not sign a non-compete agreement at all. Thus, it appears Genex actually used restrictive covenants as either a method to eliminate legitimate competition, or to strong-arm its employees to accept ever-dwindling wages and restrict their freedom to work. Genex has failed to demonstrate that the equities are in its favor and has failed to show how any reformation of the covenant would be reasonable. Therefore, Senn's non-competition agreement is unenforceable as a matter of law and cannot be reformed.

### c. Contreras' Restrictive Covenants

Contreras' agreement does not contain a choice of law provision. In determining the proper choice of law when no provision exists Washington courts look to the state with the "most significant relationship." *Barr v. Interbay Citizens Bank*, 96 Wash.2d 692, 697 (1981). Contreras lived in Washington, signed the

agreement in Washington, and worked almost exclusively in Washington. Accordingly, Washington law governs Contreras' agreement with Genex.

Contreras' agreement stated in relevant part:

> [T]hat during the one (1) year following his/her termination of employment with the cooperative, he/she will not contact any customer of Genex for the purpose or effect of causing such customer to diminish its business with the cooperative or do business with a competitor of the cooperative. For purposes of this Agreement, customer means any individual or entity for whom/which Genex provided services and with whom/which the Employee had contact on behalf of Genex during the 18 months preceding termination of Employee's employment.

The agreement also contained a prohibition from "directly or indirectly encourag[ing] any Genex employee to terminate his/her employment with Genex or solicit[ing] such an individual for employment outside Genex."

Because Washington law disfavors restraints on trade, courts "should carefully examine covenants not to compete, even when protection of a legitimate business interest is demonstrated." *Knight, Vale & Gregory*, 37 Wash.App. at 370; *see also* RCW § 19.86.030.

As to Contreras' employee non-solicitation clause, Genex again fails to meet its burden to demonstrate the reasonability of the covenant. *See Sheppard*, 85 Wash.2d. at 933. Genex does not identify any protectable interests that the covenant was contemplated to safeguard. Although Genex does not argue for the reasonableness of the covenant, it does offer an interpretation of the clause. Genex asserts that Contreras was prohibited from "inspir[ing]" coworkers "with [the] courage, spirit, or hope" to leave their employment with Genex. The parties agree that Contreras "did not solicit or recruit the other Defendants for employment with CRV." In other words, Genex argues that Contreras breached the employee non-solicit covenant because his decision to terminate his at-will employment may have inspired the other defendants with the courage to quit as well. This argument is not supported by either the facts or the law.

//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** ~ 12

The Court also refuses to enforce the non-competition agreement signed by Contreras. The reasonableness of a covenant is not measured only by its terms. Instead, "the facts and circumstances of each case must control." *Sheppard*, 85 Wash.2d at 933. Here, the facts and circumstances indicate Contreras' non-competition covenant is unreasonable.

Contreras—who cannot read or write in English—was a low-level agricultural worker with an at-will employment relationship with Genex. Contreras presents an affirmative defense that his restrictive covenants lacked consideration. Genex, meanwhile, contradictorily asserts that the restrictive covenants were signed in "consideration for Defendants' at-will employment," and that the covenants were *independent* from Genex's obligations to pay Defendants in accordance with the employment agreement and Washington wage laws. Whether non-compete agreements can ever be enforceable against at-will employees, without providing specific consideration such as a promise for future employment or training, is an open question in Washington. *See Schneller v. Hayes*, 176 Wash. 115, 118-21 (1934). Indeed, the Supreme Court of Washington has "never held that continued employment alone is sufficient consideration to uphold a non-compete agreement." *Labriola v. Pollard Grp., Inc.*, 152 Wash.2d 828, 845 (2004) (Madsen, J., concurring).  At-will employment is merely "continued employment" and does not promise an employee future employment, an analytically distinct form of consideration. *Id.* at 799-805 (citing *Schneller*, 176 Wash. at 119-21). Thus, for consideration purposes, an at-will employee signing a restrictive covenant at the time he is first hired is indistinguishable from a contract employee signing a restrictive covenant after beginning his employment.

Apart from the issue of insufficient consideration, non-compete covenants against at-will employees are far less reasonable than similar clauses for employees with contractual protections. An at-will employee may be terminated by an employer without any cause and then be prohibited from seeking new

employment in his line of work. Or, as in this case, an at-will employee may have his compensation diminished—with the promise of future diminishment—while working more days, and yet have no alternative to seek similar employment elsewhere in the area. Restrictive covenants against employees who may be terminated for any reason—including the employer's withdrawal from the region—are unreasonable.

Contreras' position as a Breeding Program Specialist, or bovine inseminator, also points toward the unreasonableness of his restrictive covenant. Nationwide, non-compete agreements are enforced against employees with low-level sales or route service jobs at a lower rate than those restricting professionals. *See* Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 661-64 (1960); *see generally* 41 A.L.R.2d 15.  The Supreme Court of Washington has also recognized that restrictive covenants are less reasonable when applied to lesser-skilled or non-professional employees. *Sheppard*, 85 Wash.2d. at 933 ("In many circumstances it might be that an employee with a not unusual skill could not reasonably be restrained from its exercise at all . . . "). In this case, Genex describes the Defendants' skills as "not unique or incomparable" and explains that CRV did not hire them for their "unique skills." Contreras was an at-will employee who did not have unique or professional skills, further demonstrating Genex's failure to meet its burden to establish reasonableness of the covenant. Therefore, Contreras' non-competition covenant is unenforceable as a matter of law.

Genex has failed to meet its burden to show that the restrictive covenants contained in agreements signed by Verduzco, Senn, and Contreras are reasonable as written. Additionally, Genex does has not met its burden to demonstrate how Senn's or Contreras' covenants could be reformed in a manner that achieves their basic purpose without resulting in an injustice. Therefore, Genex's motion for

//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 14

summary judgment as to the enforceability of the restrictive covenants is denied as moot.

### 2. Breach of the Non-Competition Covenants

Genex also moves for summary judgment that Verduzco, Senn, and Contreras each breached their respective non-competition covenants. Because the Court finds that none of the non-compete covenants are enforceable, Genex's motion for summary judgment as to breach of the covenants is denied.

### 3. Defendants' Affirmative Defenses and Counterclaims

Lastly, Genex moves for summary judgment to dismiss the defendants' affirmative defenses and counterclaims. The affirmative defenses include:

(1) the Contreras, Senn and Verduzco Agreements are unreasonable restraints of trade which are unenforceable as a matter of law;
(2) Genex has failed to mitigate its damages, if any;
(3) Genex breached state wage laws and material aspects or provisions of its verbal or implied contracts with Defendants, thereby relieving Defendants of their obligations to abide by the non-competition agreements;
(4) Genex's claims are barred by the doctrine of unclean hands
(5) Defendants' Agreements were not supported by valid consideration
(6) Genex has failed to state a claim upon which relief may be granted (VanderWeerd only)

The Defendants also state four counterclaims against Genex:

(I)     breach of employment agreement
(II)    violation of Washington wage laws—failure to pay wages owed
(III)   violation of Washington wage laws—failure to provide meal and rest periods
(IV)    violation of Washington wage laws—unauthorized deductions from wages

Specifically, Genex is seeking partial summary judgment on whether Genex violated Washington wage and hour laws (counterclaims II-IV) and whether violations of these laws would preclude enforcement of the restrictive covenants (counterclaim I/affirmative defense 3).

### a. Applicability of Washington Wage and Hour Laws

Defendants allege Genex violated three areas of wage and hour laws, including the failure to pay wages owed, failure to provide meal and rest periods,

and taking unauthorized deductions from wages. In their initial Answer and Counterclaims, the Defendants cited to WAC § 296-126-023 and RCW § 49.46 et seq. The cited provisions do not apply to agricultural workers, and Defendants sought to substitute the correct provisions, WAC §§ 296-131-010, -015, -020, in later pleadings. Genex insists this miscue is "highly prejudicial" and Defendants should not be allowed to make the counterclaim based upon the applicable regulations. Pleadings, however, need only "state a claim" and put the opponent on "'fair notice' of the claim and its basis." *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *Sagano v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004). Although this error could easily have been caught by Defendants with a cursory reading of the provisions originally cited, under the federal practice of notice pleading, Defendants are entitled to their affirmative defenses and counterclaims based upon §§ 296-131-010, -015, -020. In this case, not only did Defendants put Genex on notice of the factual basis for their claims, but in one instance even cited to a subsection that is word-for-word identical to the rule they should have cited. Thus, Genex was clearly on notice of the claims against it despite Defendants' initial failure to cite to the appropriate regulations.

Defendants allege Genex violated WAC § 296-131-010 which requires employers pay "all wages owed to an employee on an established regular pay day." Defendants claim that Genex frequently did not pay all commissions owed to the team and also claim Genex promised the Defendants would "receive the same level of pay" under its new compensation system as they did under the old system. Genex disputes both assertions. Taking the facts in the light most favorable to the non-movant, the defendants, a reasonable jury could find Genex made the representation that pay would remain level and then failed to pay all wages owed to the defendants. Therefore, Genex's motion for summary judgment to dismiss the counterclaim based on failure to pay all wages owed is denied.

//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 16

Defendants also counterclaim alleging Genex failed to provide them with meal and rest periods in accordance with state law. Genex argues Defendants were outside salesmen exempted from the requirements, "nobody has ever even heard of A.I. companies giving their technicians meal or rest breaks," and that defendants waived their breaks by not taking them on their own initiative. Although RCW § 49.46.010 contains an exception for outside salesmen, WAC § 296-131-020, the agricultural worker counterpart does not have such an exception. Additionally, the non-agricultural worker version of the rule contains a provision disposing of the rest period requirement when the "nature of the work allows employees to take intermittent rest periods" while the agricultural worker version contains no such exception. *Compare* WAC § 296-126-092(5), *with* § 296-131-020. Thus, Genex's argument that Defendants were responsible for setting their own breaks due to the nature of a BPS's flexible schedule is uncompelling. Lastly, as a corporation doing business in the state of Washington, Genex is obligated to follow Washington law and is not absolved of that obligation even if it perceives other A.I. providers as also violating state law. Because Washington wage and hour laws apply, Genex's motion for summary judgment for the dismissal of Defendants' counterclaims related to meal and rest periods is denied.

Next, Defendants counterclaim alleging that Genex took unauthorized and unexplained deductions from their paychecks. WAC § 296-131-015 requires that pay statements identify "all deductions and the purpose of each deduction for the respective pay period." Both VanderWeerd and Senn testified that deductions labeled "miscellaneous" were taken from their pay on several occasions. Contreras and Verduzco did not testify to any unexplained deductions. [1] At least some of VanderWeerd's and Senn's miscellaneous deductions have been explained as paying for "map work," or A.I. breeding analysis to pair a cow with a particular strain of bull semen. Whether or not VanderWeerd and Senn were "okay" with the

---

[1] Verduzco experienced one erroneous deduction for missing inventory. He was later reimbursed for the deduction.

deductions after that explanation is disputed. Viewing these facts in the light most favorable to the defendants, VanderWeerd and Senn have presented disputed facts sufficient to survive summary judgment on this counterclaim. Verduzco and Contreras, however, have failed to present any evidence of unexplained deductions. Therefore, Genex's motion is granted as to Verduzco's and Contreras' counterclaim for unaccounted for deductions but denied as to Senn and VanderWeerd.

### b. Whether Alleged Violations of State Wage Laws Precludes Enforcement of the Restrictive Covenants

Genex moves for summary judgment declaring any alleged violations of state wage laws would not preclude the enforceability of Defendants' restrictive covenants. This issue need not be resolved because the Court has previously determined the restrictive covenants are not legally enforceable, however, even if the covenants were enforceable, this motion would be denied.

Although Genex argues the restrictive covenants were independent from its obligations to pay the defendants agreed upon wages and to follow applicable state labor laws, these obligations were implicit (and explicit to varying degrees) in the employment agreements. Defendants argue that Genex's failure to pay all compensation due, the unilateral change in compensation plan, and violation of state employment laws amount to a material breach of the employment contract. A material breach is one that "substantially defeats the purpose of the contract." *Park Avenue Condominium Owners Ass'n v. Buchan Developments, L.L.C.*, 117 Wash.App. 369, 383 (2003). Being paid an agreed upon salary is clearly a substantial purpose of an employment contract. An unpaid installment or failure to make a payment owed could constitute a material breach depending on its severity.

Whether a breach is material is a fact-intensive issue. Here, Genex argues that any wage or hour violations it committed were so *de minimis* to be immaterial as a matter of law. Defendants allege the violations, particularly in the form of wage uncertainty and overwork, were substantial—so substantial that they were

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 18

willing to risk being sued in order to leave Genex. Because both the existence and extent of any breach is disputed, it remains unclear if any breach was material. Accordingly, Genex's motion for summary judgment for dismissal of Defendants' affirmative defense of material breach would be denied if not moot.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### 1. Contreras' Employee Non-Solicitation Covenant

Contreras moves for summary judgment declaring he did not breach the employee non-solicitation covenant found in his agreement. Because the Court finds that this clause is unenforceable as a matter of law, Contreras' motion for summary judgment pertaining to breach is granted.

### 2. Verduzco's Non-Competition and Employee Non-Solicitation Covenants

Verduzco moves for summary judgment that his restrictive covenants are unenforceable and that he did not breach the covenants to the extent that they are enforceable. Because the Court finds neither of Verduzco's restrictive covenants are enforceable as a matter of law, his motion for summary judgment is granted.

### 3. Tortious Interference with Contract

Each defendant moves separately for summary judgment on Genex's claims for tortious interference with contractual obligations. In Washington, tortious interference with a contract or business expectancy requires five elements:

> (1) existence of a valid contractual relationship;
> (2) defendants had knowledge of that relationship;
> (3) an intentional interference inducing or causing a breach or termination of that relationship;
> (4) that defendants interfered for an improper purpose or used improper means; and
> (5) resultant damage.

*Leingang v. Pierce County Medical Bureau, Inc.,* 131 Wash.2d 133, 167 (1997). Genex's claims for tortious interference fail as a matter of law because no valid contractual relationships existed to be interfered with.

//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** ~ 19

Genex's claim is premised on the theory that each defendant intentionally interfered with each other's restrictive covenants by encouraging them to leave Genex and take their customers with them. Because this Court finds that all of the restrictive covenants are unenforceable as a matter of law, there remain no valid contractual relationships which could be tortiously interfered with. Therefore, each Defendants' motion for summary judgment for the dismissal of Genex's claims for tortious interference of contractual obligations is granted.

### *CONCLUSION*

In summary, this Court finds the non-competition covenants of Verduzco, Senn, and Contreras are completely unenforceable as a matter of law. Likewise, Verduzco's and Contreras' employee non-solicitation covenants are unenforceable as a matter of law. Genex's claims against all defendants for tortious interference with contractual obligations do not survive Defendants' summary judgment motions. Lastly, with the exception of Verduzco's and Contreras' counterclaims for unaccounted wage deductions, all of Defendants' counterclaims survive Genex's motion for summary judgment.

//
//
//
//
//
//
//
//
//
//

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 20

### *ORDER*

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Partial Summary Judgment, ECF Nos. 61, 108, is **DENIED IN PART** and **GRANTED IN PART.**

2.  Defendant Contreras' Motion for Partial Summary Judgment, ECF No. 62, is **GRANTED**.

3.  Defendant Senn's Motion for Partial Summary Judgment, ECF No. 64, is **GRANTED**.

4.  Defendant Verduzco's Motion for Summary Judgment, ECF No. 66, is **GRANTED**.

5.  Defendant VanderWeerd's Motion for Summary Judgment. ECF No. 68, is **GRANTED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**ENTERED** this 3rd day of October, 2014.



Stanley A. Bastian
United States District Judge

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**~ 21